Next case on the call, I hope you got this one right, 5-16-360, Banterra Bank v. Jenkins. Counsel may proceed. Good morning, Your Honor. Some of you may not know me, I'm Alfred Sanders. I'm representing the defendants in this case. George Jenkins. As the Court is aware, I'm probably reading the briefs. This is a mortgage foreclosure. Basically, the timeline here that's significant with this case has to do with the fact that the husband and wife executed a note in a mortgage in February 29, 2008. Mr. Jenkins had some additional dealings, business dealings, with Banterra Bank over the time. There were some additional loans taken out. Disputes broke out between parties, not just about the loans, but certain business dealings, and they entered into a covenant not to sue each other. Just a minute. Thank you. In November of 2011, this document, I think my counsel attached it to their brief. It's, I believe, page 114 of the record, but it's kind of sealed because it was a confidentiality clause in it. But that is the crux of this because the bank foreclosed on this mortgage. There was a comment made in the, I believe, brief that the only thing that the defendants denied in the complaint was the amount of the loan. It's not completely accurate because there were two paragraphs that were denied. One had to do with the fact the loan was in default, was paragraph 3J of the foreclosure, and then 3K had to do with the amount. Well, their argument was, they attached an affirmative defense, was this mutual covenant not to sue? So if the document applies to this particular loan, then this loan doesn't exist. So there would be no default and no money owed. Summary judgment was filed, and this was raised to the trial judge, Judge Lambert, and he looked at it and just simply said affirmative defenses denied. Now, I wasn't the original attorney with this, but apparently it was a conversation between the attorneys for the conference call with the judge where they said if the judge denies the affirmative defense, he can go ahead and enter judgment on the summary judgment. But when he did that, all he said was the court has a view of the complaint, the affirmative defense and defense documents filed and received under seal. The court denies the defense of affirmative defense. There's no reason given. There's nothing explained in this document, analyzed in this document, just flat out denied. That's when I got involved and came in, and Interim Appearance and Succulent Counsel later took over and filed a motion to reconsider and vacate, saying that this document should apply, but I specifically asked the court in my motion to, if it was going to deny the affirmative defense, to give us some reasoning behind it. The trial court went on as to why it entered the judgment, which said, well, that's what we agreed we could do if I denied the affirmative defense. Nobody really denied that. The question was, why was he denying the affirmative defense? And once again, he did not explain that. We believe that this document completely applies here. It's important to note from this covenant that there are three items that it specifies that it's covered. Number one is loan number 57560 for $650,000, which it calls the house note. Loan 59036 for $250,000, and it refers to the field instrument. And the bank just keeps arguing that those are the only two notes, the only thing that this really addresses. But there is a third item, mark number three, in this covenant that says that this applies to and that is any occurrence, fact, circumstances, or omission arising out of a winding up of a business commonly known as Midwest Fabrication, and it calls it the Midwest business. So if there's any claims, any loans, anything else dealing with Midwest Fabrication, this covenant not to sue clearly applies to that. So nobody's really talked much about that, but it mentions those three items twice in this covenant, and this is a short one-page document. After it lists these, it talks about this covenant is also meant to adhere to the benefit of certain third-party beneficiaries, and it names Michael and Yolanda Johnson and SC Products Inc., which it refers to as DOPA. However, when it talks about how this applies to them as third-party beneficiaries, it specifically restricts their benefit under this solely to those three items, and it mentions the three items again specifically. It says be intended third-party beneficiaries of these mutual covenants solely as relates to the house note, the fill master note, and the Midwest business. So clearly the director of this document knew how to restrict the application of this document to those three items. I use the word solely. The next sentence, however, says, so there can be no opportunity for ambiguity by this document, Banterra will cancel any remaining indebtedness of Jenkins to Banterra. That's an all-encompassing clause, and clearly it shows that the directors knew the difference between restrictive language and open-ended language because one says solely those three things, and after mentioning those three, then it says any remaining. I cited in my brief, I think only one case was the outboard lane case that says the court say you have to give plain meaning to a word. Any means any. If it's restrictive at all, it's not truly any, but one of the keys there is also the word remaining. If you have eliminated the debt associated with those three things, what possibly can be remaining? Well, this particular mortgage is what was remaining, and nobody denies it. It's not a contested factor. Everybody admits they signed the note, the mortgage, and the covenant not to sue, but that's not a question. So how the judge could have said any remaining debt doesn't really mean this loan, we need an explanation for that, and that's what we've never had because if you follow the law, the statute, and apply the word as it's generally known, any means any, I don't see how they could sue us. Now, I realize the document says that's to absolve any ambiguity. I think the bank is saying there's nothing ambiguous here. We're saying there's nothing ambiguous here, but clearly we have different interpretations of what it means. So the fact that the three of us, the document, and the attorneys may say it's not ambiguous, it doesn't stop this court from saying that it is, and I understand that, which is why we've had an alternate prayer for relief from this court to say, if you make a finding in ambiguity, we'd like you to give the trial court some direction because that means the case has to go back for further determinations. There's probably a three-step process, and the first thing most people think of when you think of ambiguity to a contract is you go back and look at the intent of the parties. But there's actually two steps that would have to be taken here first. One is, under black-letter contract law, if there's an ambiguity, it's going to be construed against the drafter. So the court needs to determine, if there's an ambiguity, who drafted this. If there was a single drafter, which it's not in the record, but we know there was, and the court finds that the bank drafted it, it's going to be construed against the bank that my client provides. There's no need for the court to go any further than that. Then the question is, what if the court finds that both parties have a part in drafting this? They both have said it. Our position is that it's not just automatically going to go to the intent because of this third factor here that has to do with the winding up of the Midwest business. Is that catch-all? Was this house loan? Was this another part of the winding up of the Midwest business? So before the court gets into too much evidence of intent, what did you know, what did you think, it needs to take a look at whether or not this loan had anything to do with that business because if it did, then it's covered under clause number three specifically. So before they start getting too far into intent, they need to ask who drafted it, see if they get past that point, then whether it had anything to do with the Midwest business, and if it gets past that point, then start talking about what was the intent of the parties when they put this together. Policy counsel has cited some case law, only one that I want to address, and it's the Central Illinois Electric Services case. It says that this court can basically affirm based on whatever reason the trial court has. One of the problems is the trial court gave no reason. They never told us why they denied the affirmative defense. But that particular case, you have to take into context what it's talking about because certainly if we had a claim before a trial court that had a constitutional claim, the court said I'm ruling against the party because I don't think the Constitution is valid. This court can't affirm that based on that kind of reasoning. It would be obligated to overturn. So this is going to be a question of law because there's no testimony, there's no witnesses, there's no trial. This court is in as good a position to take a look at what the trial court had as the trial court was. There's nothing really here except a complaint, an answer, a summary judgment, affirmative defense for the use of covenant-type suit, and the doppelganger. And that's really all there is in this case. And what we're saying is at the very least, even if there's an ambiguity, there's too many facts that are left in dispute here to warrant a summary judgment, which is what was done. So we're saying that we think that this court, based on the plain language of this, can make a ruling that this covers this one according to the plain language of this contract. And there's reverse the trial court can send it back with that instruction, which would then require us probably to file a summary judgment on our behalf or a motion for judgment on the plaintiff, something to that effect, to have the case dismissed. But if this court finds that it's ambiguous, then it needs to be remanded back for findings by the trial court. We would have to do that with instructions for what these steps need to be. Look, I was clearly, you know, General Lambert in this case, and I don't know why I brought General Lambert to death, but he did not want to explain himself. He did not want to give anybody any reason as to why this wouldn't work. But this language to me is as plain as the nose on anybody's face because it specifies three things that are discharged and then does a catch-all phrase of saying, and any remaining indebtedness by Jenkins is canceled. I don't know how you come up with any other conclusion to that. May it please the Court. Counsel. Your Honor, it's important to look to the record that was developed in this case. The procedure that Judge Lambert followed was agreed to by the parties. Mr. Sanders was not there at that time. He came in a little bit later. But Counsel for Mantera and Mr. Phillips, Counsel for Jenkins, agreed that the Court could consider a rule on the affirmative defense concerning that covenant not to sue that had been filed, and they agreed that if the affirmative defense was denied, the Court would proceed to enter a judgment. Mr. Sanders appeared after that had already taken place and had a different theory of the case, but it doesn't change the procedural posture that the Court found itself in at the time that Judge Lambert granted the entry of a judgment. It's important to note that while the pleadings were presented to the Court, much the same as a default hearing would have been in a foreclosure, parties well represented by Counselor had been to answer an affirmative defense. And it was not a default judgment, and the judge so noted in his rather extensive docket entries in this case. Concerning the covenant not to sue, the parties don't dispute that it was entered into. However, it's important to note the extensive narrative about just what was being released and what was being disposed of by that document at that time. There was what was referred to as the House note, which was a 2009 promissory note, the Fieldmaster note, and anything concerning an entity called Midwest Fabrication, and in conjunction with the transfer of Midwest Fabrication and Fieldmaster to a third party not involved in this litigation. It is ironic that that has the words, so that there can be no opportunity for ambiguity. But it's important for the Court to give effect to, if it's possible to, in construing these documents, to give effect to all of the documents that were executed by the parties. And the only way to do that is to find that the mutual covenant not to sue from 2011 did not release the 2008 mortgage that's at issue in this case. And the crucial factor in that is that the parties entered into a loan modification of the instant mortgage, the one involved in this case, in 2013. And that document is attached as an appendix to my brief. It specifically refers to and ratifies the existence of the instant mortgage in this case. It lists amounts, and it's executed by the parties. And as to the issue that Dorothea Jenkins was not part of that, that's disposed of by very clear language in the mortgage itself. It provides that someone who is a mortgagor, but who is not an obligor on the note, in other words, doesn't owe the money, but encumbers the property, that person's consent is not necessary in order to modify the mortgage. The court had before it the complaint and the answer in affirmative offenses. Those were both verified and could be considered as in the nature of affidavits. In addition, the court had the affidavit of proof from my client, Van Terra, that established all of the relevant facts concerning the loan,  and, in fact, concerning the modification of the loans as done in 2013. That affidavit was not contradicted by any counter-affidavit of any kind. The motion to reconsider is not supported by affidavit or by verification on its face. And so the court had before it verified or affidavit-type evidence, certainly sufficient to reach the ruling that the judge did. I think the crucial thing is the basic principle that the court, in construing these documents, needs to give effect to all the documents that the parties signed. The only way to do that is to find the mutual covenant not to sue from back in 2011. Despite some language that counsel has relied upon and has seized upon, actually refers only to those notes and mortgages that concern the house note and the field master note and the transactions with Johnson and Dover that took place at that time. The covenant does not refer to the note that's at issue in this case at all. And so if the note that we've sued on in this case had been released and disposed of in 2011, why would the defendants have entered into a modification of that agreement? It's entirely inconsistent with the position that they now take that says that we've got a release and we can stand on this. Nobody turns down a $150,000 gift. And that's what the effect would have been if that mutual covenant not to sue had disposed of this mortgage entirely. It's important to look to the record to see what has been admitted and what has been denied. And the defendants in their answer denied only those paragraphs of the complaint for foreclosure that dealt with the existing defaults and the amounts that were due at the time. And that's customary for a defendant that wants to appear and participate in the litigation but doesn't have a dispute about whether they mortgage their property or anything like that. We do have the affirmative defense that that is just sufficient to establish that this mutual covenant not to sue exists. We haven't disputed that the parties entered into that back in 2011. However, the defendants in their answer admitted not only the number of paragraphs that are listed in the complaint, but they also admitted all of the deemed allegations that sometimes we refer to as being like the old spaghetti sauce commercial that's in there. The deemed allegations of infill incorporates into the form of complaint that the law provides. And there are a great number of them that, if not denied, are conclusively admitted before the court. And they include that the debt exists, that the mortgage and note are correctly stated in the complaint, the mortgagor has the interest that they reside having, defaults occurred as indicated. All of that is admitted on the record. And so the judge had ample verified evidence in the nature of affidavits allowing him to reach the conclusion that he did. And it's important to remember that we've been calling this a motion for summary judgment, and I believe procedurally that's the closest thing to what we have here. Because we do have affidavits. We have some things that are extraneous to the complaint. And so if it is a motion for summary judgment, this court's review is de novo. The court can, as I indicated and as Mr. Sanders referred to, the court can affirm this judgment on any basis that appears in the record. And I would submit that when you put together the things that were admitted and denied in the answer to the complaint, the other contracts of the parties, the mutual covenant not to sue and the modification of the 2008 mortgage, then the only way to give effect to all those documents and to not render this loan modification to be completely meaningless and of no effect at all when the parties obviously signed and entered into it, the only way to do that is to find that that mutual covenant not to sue is limited to the loans and the obligations that are itemized in there and the transaction that it concerns. And for those reasons, Your Honor, I'm happy to respond to any questions you guys may have. We would ask that the trial court be affirmed on this matter.  Thank you, Your Honor. Rebuttal. Your Honor, if my colleague says that the court needs to consider all documents executed by the parties and he brings up this modification, my question is what, in 2011, when this covenant not to sue was executed, what was the effect of it? Because the modification didn't occur until 2013. If this lawsuit had been filed in 2012, there'd be no modification. Does the fact that they signed something two years later change what the effect was in 2011? Counsel, didn't your client, though, ratify by entering into this modification agreement? The question is ratify what? There was no debt. The debt was clearly discharged. As the covenant says, there's nothing to ratify. Now, does it mean he can't come back and decide to pay somebody even though he has no other legal obligation? I suppose. And opposing counsel brings up a question as to why he would do that. Maybe a good question. But that's a question of fact. In this case, we decided to confirm the judgment saying there are no facts left. So if there's an issue here about whether or not there was a ratification or something afterwards, that's something the trial court needs to determine. It never got to that point. It never even asked that question. Counsel talks about all these things that were admitted. Basically, it's a standard mortgage complaint. It says you executed a note on a certain date. They don't deny that. It says you executed a mortgage on such and such date. They don't deny that. It says the mortgage was filed on certain date. There's no reason to deny that. That all happened. But when he got down to the parking lot, well, now you're in default and you owe money. That's what they denied because he said the covenant is not to sue and he gave it all away. So they only admitted it. Everything they admitted was true. They did sign the papers and then they signed other papers. So I don't see where there's an admission here. The fact that they filed an affidavit of proof, let's keep in mind that foreclosures were all verified complaints. So one person says, I did this. The other says, under oath, no, I didn't. Does that mean that now they come back with an affidavit saying, oh, yes, you did? Well, I've got two yes, you did's against one no, I didn't. So therefore, I win. What they filed an affidavit for flew in the face of the actual verified complaint that said we have a covenant not to sue. That applies. So that raises the question of fact. I don't think there's anything the judge can decide on his own unless he looks at that document. So this document clearly applies here. There is no ambiguity here. It applies to every single debt you owe to Vanterra Bank. The thing that needs to be noted here is that the wife signed the original note and the mortgage and the bank had her sign that covenant not to sue. My argument is when they did that, that loan was negated and the mortgage disappeared because there's no underlying debt to support the mortgage. So if they want to come back later, two years later, and say there's a new loan or something else has happened, I think they have to execute a new mortgage. And the wife did not sign this modification. She had a reasonable expectation to believe that that covenant in 2011 extinguished the mortgage on this house. So I don't think the husband coming back two years after the fact, signing some more documents with Vanterra by himself, re-initiates the prior mortgage. I think that mortgage disappeared at the very least. It needs to be re-initiated, which means at the best, Vanterra may be staring at a $172,000 unsecured loan due only to by George Jenkins. But they thought this was a mortgage foreclosure. And that's the problem. There is no mortgage here because that mortgage should have been extinguished in 2011, flat out with the covenant not to sue. But there was no underlying debt to support the mortgage at that time. And the problem here with this case is there's no, there's no middle ground. Either it applies to the loan and my client wins or it doesn't apply and the bank wins. But again, we just believe that any means any for mating was all-encompassing for anything over and above those three options. We ask for your first comment. Thank you.